The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Taylor. As the appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives, the Full Commission modifies and affirms the Opinion and Award of the Deputy Commissioner as follows:
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The plaintiff was injured by accident in the course and scope of his work on 23 June 1993 at which time he suffered a crush injury to his right index finger.
It is expressly not admitted but rather is denied by defendant and Carrier, that plaintiff was an employee of defendant or was covered by the North Carolina Workers' Compensation Act. Plaintiff contends otherwise.
2. The parties stipulated into evidence as Stipulated Exhibit 1 — the Motor Vehicle Agreement Between Independent Contractor and Ranger Transportation, Inc., ("MVA Agreement") with attachments consisting of seven pages.
3. The parties stipulated into evidence as Stipulated Exhibit 2 — a packet of medical records including the following:
 — Orthopaedic Associates of Portland, P.A. (Dr. John T. Chance), seventeen pages;
 — Southern Maine Medical Center, twelve pages;
— Mercy Hospital, seventy-five pages;
— Pamlico Medical Center, one page;
— Maine Anesthesiology, one page.
4. This case is the subject of an Interlocutory Opinion and Order filed by former Deputy Commissioner Lawrence B. Shuping, Jr., on 9 January 1997, concluding that plaintiff filed his claim with the Industrial Commission within two years of the alleged 23 June 1993 injury giving rise hereto; therefore, the Industrial Commission has jurisdiction of this claim if plaintiff is determined to be an employee.
 ***********
Based upon all of the competent evidence adduced at the hearing, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing of this matter, the plaintiff was a twenty-nine year old male, born 2 October 1967. On 23 June 1993, plaintiff was working for Ranger Transportation as a driver and had been for six months.
2. The plaintiff drove for defendant under an arrangement (MVA Agreement) wherein he leased his truck to defendant. Thereafter, defendant allowed plaintiff to drive under defendant's Interstate Commerce Commission (ICC) authority. This was an exclusive arrangement, and plaintiff was required only to haul for defendant.
3. Furthermore, defendant required plaintiff to log the hours of service which he performed and provide them to defendant. Defendant also required that plaintiff inspect his equipment periodically and, thrice yearly, carry the truck to a facility approved by defendant for such an inspection.
4. Defendant assigned the freight to plaintiff, and plaintiff was required to perform the picking up or delivering of goods within the time required by defendant's customer.
5. Defendant required that plaintiff have two I.D. numbers, one indicating defendant's name and operating authority number and the other, a number required only by the defendant so that the public would have a number to report unsafe driving or other problems to defendant.
6. If plaintiff desired to have someone else drive his truck, defendant required that the substitute driver be approved by the defendant. Under the agreement, plaintiff was denominated throughout as an independent contractor.
7. Plaintiff was required to pay taxes on the truck and for fuel. Defendant obtained an Illinois-based plate for plaintiff's truck, but plaintiff was required to pay for this tag.
8. Defendant required plaintiff to sign a Contractor Protection Plan which purported to be in lieu of workers' compensation and to absolve the defendant of liability for workers' compensation payments.
9. Plaintiff did not own the trailer which he pulled and was using trailers belonging to defendant. Plaintiff was not paid a salary but paid a percentage of the profits from each individual load. On some loads that amount was determined by mileage and on other loads by weight. The rates were negotiated by defendant with defendant's customers, and plaintiff had no control of the terms of these arrangements.
10. Plaintiff occasionally received incentive pay bonuses from defendant based on plaintiff's performance.
11. On 23 June 1993, plaintiff was sent by defendant from Maine to Bayboro, North Carolina, with an empty trailer to pick up a load of potatoes at the McCotter farm. As plaintiff was loading the potatoes in the course of his employment, his right hand became caught in a conveyor belt and was crushed.
12. Thereafter, plaintiff received medical treatment at an emergency room. Afterward, he returned to his rig and carried the load of potatoes to Killingly, Connecticut to Frito-Lay.
13. By the time plaintiff completed delivering his load to Killingly, Connecticut, he had driven over ten hours, waited in line for twenty-five trucks before he could unload, shifted the entire trip with his injured right hand which was injured and had to detach the trailer and unload it himself in Connecticut.
14. Since plaintiff's pain had increased greatly, he sought medical treatment. Plaintiff consulted with Dr. John Chance, who detected infections in plaintiff's hand and admitted him to the hospital for emergency surgery, which involved the insertion of a pin in plaintiff's hand. The plaintiff remained in the hospital for seven days and out of work for five months.
15. Plaintiff currently has some restricted motion in his finger and some pain. He did not become re-employed with Ranger Transportation as he was unable to make payments on his truck and was no longer in possession of it by the time he was able to return to work. At the time of the hearing plaintiff was driving a truck for another company.
16. On 23 June 1993 when plaintiff injured his right hand, plaintiff was operating under an Agreement whereby defendant, which was licensed to transport goods by truck in interstate commerce, leased the truck from plaintiff who was not so licensed and attached its plates to plaintiff's vehicle while it was engaged in transporting goods in interstate commerce. The contract between plaintiff and defendant was sufficient to make plaintiff an employee of defendant within the purview of the North Carolina Workers' Compensation Act.
17. Plaintiff became engaged in his contractual duties as an employee of defendant upon leaving Maine to pick up the intended cargo. Plaintiff's loading of the truck with potatoes was an integral part of his task of transporting goods in interstate commerce and, in fact, was the entire purpose of plaintiff's trip to transport goods in interstate commerce. Accordingly, while plaintiff was loading the potatoes, he did so under the Workers' Compensation Act as an employee of defendant.
18. Pursuant to the Agreement and the course and scope of the dealings between the parties, defendant-carrier maintained sufficient control over plaintiff and the task which he was conducting to constitute an employment relationship.
19. On 23 June 1993, plaintiff suffered an injury by accident arising out of and in the course and scope of his employment with defendant Ranger Transportation when he suffered a compensable injury to his right hand as a result of an accident while loading a truck. At the time of his 23 June 1993 injury by accident, plaintiff was an employee of defendant-employer.
 ***********
Based upon the foregoing findings of fact and conclusions of law the Full Commission makes the following additional:
 CONCLUSIONS OF LAW
1. On 23 June 1993, plaintiff was an employee of defendant-employer as he carried out his duties pursuant to the Agreement of transporting and loading goods, and as such, was subject to the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2(2); Brown v.Truck Lines, 227 N.C. 299, 42 S.E.2d 71 (1947).
2. Although Paragraph 4 of the Agreement between the parties portends to make loading of defendant's tariff the act of an independent contractor, the nature of the task indicates that absent the contractual clause the elements required for workers' compensation coverage of plaintiff would otherwise exist. Therefore, defendant's attempt to evade responsibility for Workers' Compensation by requiring plaintiff to enter into a Contractor Protection Plan is illegal in North Carolina and void as an unsuccessful attempt to contract away its workers' compensation liability. N.C. Gen. Stat. § 97-6; Hoffmanv. Truck Lines, Inc., 306 N.C. 502, 293 S.E.2d 807 (1982).
3. On 23 June 1993, defendant-carrier exercised sufficient control over plaintiff's duties and equipment to constitute an employment relationship. Further, the nature and goal of plaintiff's actions at the time of his injury were reasonably related to his employment. N.C. Gen. Stat. § 97-2(2);Hoffman v. Truck Lines, Inc., 306 N.C. 502,293 S.E.2d 807 (1982); Brown v. Truck Lines,227 N.C. 299, 42 S.E.2d 71 (1947); Smith v. CentralTransport, 51 N.C. App. 316, 276 S.E.2d 751 (1981).
4. To the extent the same is reasonably designed to effect a cure, give relief or lessen the period of disability, defendant-employer shall pay for all medical treatment arising from this injury by accident. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. In light of the conclusion by the Full Commission that plaintiff was an employee of defendant-employer on 23 June 1993 and sustained an injury by accident arising out of and in the course of his employment, defendant is liable for all compensable consequences of that injury.
2. To the extent the same is reasonably designed to effect a cure, give relief or lessen the period of disability, defendant-employer shall pay for all medical treatment arising from this injury by accident, including treatment provided by Orthopaedic Associates from Portland, Southern Maine Medical Center, Mercy Hospital, Pamlico Medical Center and Maine Anesthesiology.
3. Defendants shall pay the costs.
 S/_________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/______________________ RENÉE C. RIGGSBEE COMMISSIONER
S/______________________ CHRISTOPHER SCOTT COMMISSIONER